United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 13, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-40418

MOLLY HARVILL,

Plaintiff-Appellant,

versus

WESTWARD COMMUNICATIONS, L.L.C., ET AL.,

Defendants,

WESTWARD COMMUNICATIONS, L.L.C.;
WESTWARD COMMUNICATIONS, LP,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Plaintiff Molly Harvill ("Harvill") brought this suit against her employer, Westward Communications ("Westward"), alleging claims for sexual harassment, constructive discharge and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. The district court granted summary judgment in favor of Westward on the grounds that (1) the alleged harasser's

conduct was not sufficiently severe and pervasive to constitute a hostile work environment, (2) Harvill did not establish that Westward failed to take prompt remedial action once it learned of the alleged harassment, (3) Harvill failed to exhaust her administrative remedies before the Equal Employment Opportunity Commission (EEOC) as to her constructive discharge claim, (4) Harvill could not establish constructive discharge, which was also the basis for her retaliation claim, and (5) there was a paucity of evidence to support her claim for unpaid overtime compensation under the Fair Labor Standards Act. She appeals the district court's grant of summary judgment as to her sexual harassment, retaliation and unpaid overtime compensation claims. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Molly Harvill brought this action alleging that she had been repeatedly subjected to sexual harassment by a co-worker. In January of 2001, she began working with the *Grand Saline Sun* ("the *Sun*") as an office manager for the newspaper. The paper is owned by Westward Communications. During a new employee orientation, Harvill received a company handbook that included an explanation of the company's anti-harassment policies. The handbook stated that if an employee believed that she was being harassed, she was to directly inform her immediate supervisor. If speaking with the supervisor did not provide sufficient recourse, then the employee must direct her complaint to the Director of Human Resources.

On October 11, 2001, Harvill, along with fellow employee Ladonna Allison Hockman ("Hockman"), alleged to their immediate supervisor Nell French, the publisher of the *Sun*, that they had been sexually harassed by Oscar Rogers, who operated a commercial printing press within the *Sun*'s offices. French then initiated an investigation into the allegations, speaking with several female

employees of the *Sun* about whether they were cognizant of any inappropriate behavior by Rogers. Additionally, French spoke with former employees to determine whether they too had information regarding allegations of Rogers' having sexually harassed female employees at the Sun; however, French never spoke with Rogers, who remained unaware of any sexual harassment allegations being made against him.

Harvill claimed that Rogers continued to sexually harass her even after she had reported his conduct to French. Harvill approached French two or three times to inform her that Rogers' inappropriate behavior was continuing. Finally, in February of 2002, Harvill informed Westward that she would be filing an EEOC charge against the company based on Rogers' continuing conduct. Gina Fisher, Westward's Director of Human Resources, then launched her own investigation. Fisher contacted Rogers and informed him that sexual harassment allegations had been made against him. Fisher also alerted French that Harvill claimed that she was still being harassed by Rogers. Fisher further spoke with an employee of the *Sun* named Aggie McDonald. Harvill and Hockman claimed that McDonald would substantiate their claims. McDonald had alleged that Rogers had accidently brushed up against her more than a decade earlier; however, contrary to Harvill's representation of McDonald's declarations, McDonald told Fisher that she did not believe that he had intended anything untoward. Indeed, McDonald asserted that, to her knowledge, Rogers had never behaved inappropriately towards any female employee.

Harvill and Fisher scheduled a telephone conversation for February 21, 2002, during which Harvill described Rogers' conduct towards her, which included several alleged instances of lewd and inappropriate touching. When Fisher queried Harvill as to why Harvill had not brought these

3

complaints to her earlier, Harvill asserted that she had been expressly instructed by her supervisor French not to ever go above French's head on any matters.

Fisher immediately ordered that Rogers no longer work in close physical proximity to either Harvill or Hockman, who had both made allegations of sexual harassment against him. Fisher continued to interview numerous former and current employees of the *Sun*. Fisher's investigation uncovered no evidence specifically corroborating Harvill's or Hockman's allegations regarding Rogers. On March 13, 2002, Fisher informed both Rogers and French of the results of her investigation. She also instructed Rogers to avoid direct interaction with Harvill and Hockman. Less than a week later, Fisher met with Harvill and informed Harvill that she was unable to uncover sufficient corroborating evidence to support Harvill's allegations and warrant further company action against Rogers.

On March 25, 2002, Harvill sought leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. She was informed by Fisher that her job and benefits would remain in place, and that her leave fell under the auspices of the FMLA. Within a relatively short period of time after she had taken her leave, Harvill tendered her resignation, asserting that this was at the behest of her physician. Shortly thereafter, Harvill brought this action claiming, inter alia, sexual harassment, constructive discharge, and retaliation. Westward eventually moved for summary judgment, and the motion was granted. This timely appeal ensued.

## II.  DISCUSSION

A. Standard of Review

A party's motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

4

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). We review the district court's grant of summary judgment de novo and apply the same legal standards that the district court applied to determine whether summary judgment was appropriate. *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005).

B. Sexual Harassment Claim

Harvill first argues that the district court erred in granting summary judgment for Westward on her sexual harassment claim because substantial evidence exists that the harassing conduct was severe or pervasive, and that her employer failed to take prompt remedial action.

Harvill can establish that she was sexually harassed in violation of Title VII by proving, inter alia, that the harassment created a hostile or abusive working environment. *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). To establish a hostile work environment claim, Harvill must demonstrate that: (1) she is member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of Harvill's employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.* at 298.

The parties agree that Harvill has established the first three elements of her prima facie case; they only dispute whether the harassment affected a "term, condition, or privilege" of Harvill's

5

employment, and whether Westward knew or should have known of the harassment and failed to take prompt remedial measures.

1. *Whether the harassment affected a term, condition, or privilege of employment*

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (alteration in original) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). In determining whether an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift*, 510 U.S. 17, 23 (1993). We have also considered whether the complained of conduct undermines the plaintiff's workplace competence. *Hockman v. Westward Commc'ns*, 407 F.3d 317, 326 (5th Cir. 2004) (citing *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.2d 263, 270 (5th Cir. 1998)). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reaso nable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (citing *Harris*, 510 U.S. at 21-22).

The district court held that the harassment by Rogers was not so severe and pervasive that it altered the terms and conditions of Harvill's employment. In requiring Harvill to establish that the conduct was both severe *and* pervasive, the district court applied the wrong legal standard. As quoted above, the Supreme Court has stated that Title VII provides a legal remedy to victims who establish that the abusive conduct was severe *or* pervasive. *Meritor* 477 U.S. at 67; *see also Harris*, 510 U.S.

at 21; *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor*, 477 U.S. at 67); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000) ("Harassment need not be severe *and* pervasive to impose liability; one or the other will do."). The district court's error may have resulted from inconsistent application of the "severe or pervasive" standard in this circuit. *Compare Hockman*, 407 F.3d at 326, 329 ("severe and pervasive"), *and Shepherd*, 168 F.3d at 874 (same (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996))), *with Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) ("severe or pervasive"), *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (same), *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794 (5th Cir. 1994) (same), *and Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 802 (5th Cir. 1999) (Weiner, J., specially concurring) (emphasizing that the standard is the disjunctive severe *or* pervasive). Nevertheless, the Supreme Court's decisions are controlling and we correctly stated the standard originally in *Waltman v. International Paper*, 875 F.2d 468, 477 (1989); therefore, subsequent incorrect statements of the test are not binding. *See, e.g.*, *H&D Tire & Automotive-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion.").

Contrary to being an irrelevant distinction, as Westward's counsel asserts, the requirement that a plaintiff establish that reported abusive conduct be both severe *and* pervasive in order to be actionable imposes a more stringent burden on the plaintiff than required by law. The Supreme Court has stated that isolated incidents, if egregious, can alter the terms and conditions of employment. *See Faragher*, 524 U.S. at 788; *see also Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) ("[W]e have often recognized that even one act of harassment will suffice [to create a hostile work environment]

7

if it is egregious."); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998) (holding that a single incident of physically threatening and humiliating conduct can be sufficient to create a hostile work environment for a sexual harassment claim); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for the purposes of Title VII liability."). By contrast, under a conjunctive standard, infrequent conduct, even if egregious, would not be actionable because it would not be "pervasive."

Harvill alleges that Rogers' harassment began in July 2001 and continued until Gina Fisher, the Director of Human Resources, confronted Rogers with the allegations in February 2002. In her deposition, Harvill testified that, during that seven-month period, Rogers grabbed her and kissed her on the cheek, popped rubber bands at her breasts, fondled her breasts "numerous times," patted her on her buttocks "numerous times," and came behind her and rubbed his body against her. At one point, Harvill estimated that Rogers touched her breasts or her buttocks perhaps as often as once a week–although she later stated that it may not have been as often as once a week. She also claims that on one occasion Rogers made comments to her about her sex life and her abilities in bed. Harvill stated that she protested *every time* Rogers touched her breasts and she also protested when Rogers would pat her buttocks. Undoubtedly, the deliberate and unwanted touching of Harvill's intimate body parts can constitute severe sexual harassment. *See, e.g.*, *Worth*, 276 F.3d at 268 ("[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment."). Viewing the evidence in the light most favorable to Harvill, the non-movant, we conclude that a reasonable jury could find that Rogers' conduct was sufficiently severe or pervasive to alter a term

or condition of Harvill's employment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (stating that the inquiry on summary judgment is whether the evidence could lead a rational trier of fact to find for the non-moving party); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The district court concluded, and Westward stringently urges on appeal, that "Harvill's allegations of 'numerous touchings or fondlings' and 'numerous butt grabbings' [were] too conclusory as to create an issue of material fact on her harassment claim." *Harvill v. Westward Communications, LLC*, 311 F. Supp. 2d 573, 582 (E.D. Tex. 2004). We disagree. Harvill recalled that the first incident of harassment occurred in July 2001, after Rogers had returned from a vacation and she walked back to his office area to give him a message. She contends that he used the opportunity to grab her and kiss her on her cheek. She stated that sometime after that, Rogers touched her breast for the first time in the hallway leading to the front office, and she described the exchange that occurred as a result of the touching. She recalled the circumstances surrounding occasions when Rogers popped rubber bands at her breast and patted her on her buttocks, and she listed individuals who allegedly witnessed the events. Additionally, she recalled a conversation in which Rogers questioned her about her sex life and told her that a technician from Ramirez Air Conditioning, who she had dated many years prior, had allegedly told him that she was skilled in bed. We do not agree that Harvill's allegations are too conclusory to permit a fact finder to assess the totality of the circumstances. Harvill's assertions that she was touched "numerous times" instead of providing exact dates or the exact number of instances do not render her allegations so conclusory that they fail to create a genuine issue of material fact. *Cf. Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) (finding that the ability to recall the exact dates and circumstances of only a few of the

incidents of harassment may make it "difficult to convince a jury that pervasive harassment in fact took place," but do not defeat the plaintiff's claim as a matter of law). To require that Harvill provide precise dates for the occurrences or provide an exact number of occurrences to support her allegations is an onerous burden not required by law. Whether her allegations are too vague to ultimately carry the day is a credibility determination, or requires weighing the evidence, both of which are more appropriately done by the trier of fact. *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (stating that the court cannot make credibility determinations or weigh any evidence on a summary judgment motion). Accordingly, the district court erred in concluding that Harvill did not raise a genuine issue of fact as to whether Rogers' alleged conduct towards Harvill was sufficiently severe and pervasive[1] such that it altered the terms and conditions of her employment.

2. *Whether Westward failed to take prompt remedial action*

The district court also held that Harvill failed to establish the fifth prong of a prima facie case for a hostile work environment sexual harassment claim; specifically, she did not show that Westward failed to take prompt remedial action upon being informed of the harassment.

We have observed that determining "[w]hether an employer's response to discriminatory conduct is sufficient 'will necessarily depend on the particular facts of the case,'" such as the remedial steps taken and the severity of the harassment. *Hirras v. Nat'l. R.R. Passenger Corp.*, 95 F.3d 396, 399-400 (5th Cir. 1996) (quoting *Waltman*, 875 F.2d at 479). "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402 (5th Cir. 1993).

---

[1]Again, we emphasize that the district court erroneously applied the conjunctive "severe and pervasive" standard rather than the disjunctive "severe or pervasive" standard.

10

"Prompt remedial action must be reasonably calculated to end the harassment," therefore, Westward may be held liable "despite having taken remedial steps if [Harvill] can establish that [Westward's] response was not reasonably calculated to halt the harassment." *Skidmore v. Precision Printing & Packaging Inc.*, 188 F.3d 606, 615-16 (5th Cir. 1999) (internal quotation marks omitted).

We have also recognized that an employee must take advantage of corrective opportunities provided by the employer. *Woods*, 274 F.3d at 300 n.3. Nonetheless, if an employee believes that bringing a subsequent sexual harassment complaint would be futile, or "it becomes objectively obvious that the employer has no real intention of stopping the harassment, the harassed employee is not obligated to go through the wasted motion of reporting the harassment." *Id.* at 300-01.

Harvill informed her supervisor, Nell French, of the harassment in October 2001. She argues that French failed to take prompt remedial action and, as a result, the harassment continued for four more months. She claims that French's investigation was not reasonably calculated to end the harassment because French did not confront Rogers or interview the appropriate witnesses. Westward counters that French did take remedial action, by investigating the allegations; however, French found that the claims could not be substantiated and, therefore, further remedial steps were unnecessary. Westward also argues that Harvill unreasonably failed to follow the company's procedure for lodging a harassment complaint because Harvill did not bring her complaint to higher management when she became dissatisfied with the way French handled the situation. When Harvill did contact Human Resources, the company immediately separated Rogers and Harvill, after which time Harvill concedes that all harassment ceased. Therefore, Westward contends that it did take prompt remedial action that was calculated to end the harassment after Harvill bypassed French and took advantage of the corrective opportunities made available to her. The district court granted summary judgment for

11

Westward on this basis because it concluded that Harvill unreasonably failed to follow the company procedure for lodging a complaint, and once she did, prompt remedial action was taken. Harvill claims that the district court's ruling was in error because the court did not take into account that she and her co-worker, Hockman, reported their allegations on more than one occasion to French, but did not initially go to Human Resources because they were directly commanded by French to never go over French's head on any matters.

Hockman asserted similar claims against Rogers in a Title VII action in federal court and on appeal this court denied her relief. *See Hockman*, 407 F.3d 317. The facts presented here are distinguishable from the factual circumstances in *Hockman* specifically as they relate to whether the harassment was "severe or pervasive."[2] Notwithstanding the unique factual scenario Harvill presents regarding her interactions with Rogers, we find that the fifth prong, namely the remedial measures Harvill sought and received from Westward, is the dispositive issue and it is on this issue that our prior opinion in *Hockman* is instructive. Because the record before us is substantially similar to the record in *Hockman* as to this dispositive issue, the fates of Hockman and Harvill are intertwined. In *Hockman*, this court held that Hockman "unreasonably failed to bring her complaint to a higher-echelon employee (Fisher) [even] though she was dissatisfied with the way French handled the

[2]As it relates to our prior discussion of "severe or pervasive" standard, we note the two cases are distinguishable. Harvill stated that Rogers touched her breasts "numerous times" and would pat her buttocks. She also averred that she protested *every time* Rogers touched her breasts and she also protested when Rogers would pat her buttocks. As previously stated, we find that the harassment Harvill endured satisfies the disjunctive standard. By contrast, Hockman alleged that "Rogers 'would sort of brush up against [her]'" and she admitted that "these *brushings* were neither severe nor pervasive." *Hockman*, 407 F.3d at 326 (emphasis added). In her deposition testimony, Hockman admitted that she did not protest when he brushed up against her because the incidents were over before she had the chance to say anything. "In fact, at first she thought they were accidental, stating that 'just as quickly as [an incident] started, . . . it ended .... And once it was over, it was over.'" *Id.* (second omission in original).

situation." 407 F.3d at 329. The *Hockman* court concluded that Hockman could not establish that Westward failed to take prompt remedial action because:

> (1) Hockman received the Westward employee handbook containing the company's anti-harassment policy; (2) the policy provides that if the employee does not feel that her allegation is being handled satisfactorily by his or her supervisor, then she should report the incident directly to the Director of Human Resources; (3) she acknowledged her receipt of the handbook and understanding of its provisions with her signature; and (4) despite her awareness, there is no evidence that Hockman availed herself of any of the company's provisions after speaking to French, several months after the alleged harassment began.

*Id.* at 329-30. The court found it irrelevant that Hockman and Harvill were provided with an outdated copy of the anti-harassment policy. The *Hockman* court also found it irrelevant that, at an employee meeting concerning an unrelated event, French had emphatically told Harvill and Hockman that they were never to go over her head about anything.

As in *Hockman*, Harvill acknowledged that she signed a document stating that she received Westward's employee handbook. The employee handbook outlined the company's anti-harassment policy and stated that "[i]f the employee feels that it would be inappropriate to report the matter to the immediate supervisor or the matter is not satisfactorily resolved at this level, the employee should report the incidents directly to the director, Human Resources . . . ." Harvill also conceded that the document she signed acknowledging receipt of the employee handbook stated that it was the obligation and responsibility of the employee to read and be familiar with the contents of the handbook. Harvill and Hockman approached French together in October 2001 to present their claims of sexual harassment by Rogers. On more than one occasion, both Harvill and Hockman approached French after the October meeting to report that the harassment was continuing but did not inform Human Resources of their complaints. Both women also stated that the harassment *completely ceased*

13

after an attorney, acting on behalf of both Harvill and Hockman, finally sent a letter to Robert McMaster, the Chief Executive Officer of Westward, and Gina Fisher, Westward's Director of Human Resources, to inform Westward of Rogers' behavior.

As it concerns Harvill's familiarity with the anti-harassment policy and the steps she took to inform her employer of the alleged harassment, the circumstances in *Hockman* and in the case at bar are not just similar but identical. Harvill and Hockman each signed a document in which she acknowledged receipt of the employee handbook and stated that she understood the anti-harassment policy. Moreover, they acted in concert in informing their employer of the alleged harassment. Because the circumstances in *Hockman* and in the case at bar are indistinguishable as to this fifth prong, we conclude that we are bound by this court's decision in *Hockman* that, on these particular facts, the employee unreasonably failed to take advantage of corrective opportunities provided by Westward. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) ("[O]ne panel of this court cannot overrule the decision of another panel . . . ."). Once the CEO and Director of Human Resources were notified of Harvill's claims, Westward acted swiftly in taking remedial measures and the harassment ceased. Harvill has not raised a genuine issue of fact on the prompt remedial action element of her prima facie hostile work environment claim; therefore, we affirm the district court's grant of summary judgment for Westward.

C. Retaliation Claim

Harvill also argues that there is sufficient evidence to support her claim that Westward retaliated against her for filing a sexual harassment complaint. She contends that after she filed her sexual harassment complaint, she heard her new supervisor say he would get a bonus if he ran her off; a bogus racial harassment charge was brought against her; an unknown individual began taking

14

pictures of her outside of the offices; and the other supervisors and co-workers treated her in a hostile manner. She argues that she was constructively discharged because all of these circumstances combined to create intolerable working conditions, which ultimately caused her to resign on advice of her doctor.

To establish a prima facie retaliation claim, Harvill must prove that: (1) she engaged in an activity that Title VII protects; (2) Westward carried out an adverse employment action; and (3) a causal nexus exists between her protected activity and Westward's adverse action. *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999). The filing of an EEOC complaint is clearly a protected activity within the meaning of the statute. *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000). Thus, Harvill has satisfied the first prong of her prima facie case.

Constructive discharge is the adverse employment action that is the basis for Harvill's retaliation claim. In order to establish a prima facie case of retaliation based on constructive discharge, Harvill "must prove that 'working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign.'"*Landgraf v. USI Film Products*, 968 F.2d 427, 429-30 (5th Cir. 1992) (quoting *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980)).

> In determining whether a reasonable employee would feel compelled to resign, we have considered the relevancy of the following events:
> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . .

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (alteration in original) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000)). "Discrimination alone, without

15

aggravating factors, is insufficient for a claim of constructive discharge . . . ." *Kinney Shoe*, 237 F.3d at 566. Harvill "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Landgraf*, 968 F.2d at 430.

The district court concluded that Harvill did not exhaust her administrative remedies as to this claim because she failed to allege constructive discharge in her EEOC complaint. Consequently, the court granted summary judgment to Westward on Harvill's constructive discharge claim. Aside from constructive discharge, Harvill has not alleged any adverse employment action that could serve as a basis for a retaliation claim. Thus, the court held that her retaliation claim must fail because the court could not consider her constructive discharge argument.

Even assuming arguendo that the district court could have considered her constructive discharge argument, we still conclude that Harvill's allegations of retaliatory conduct do not preclude summary judgment. In her affidavit, Harvill asserts that she was "treated rudely and with general hatefulness" by other supervisors and employees; that a man she did not know began taking pictures of her; that a meritless racial harassment charge was brought against her; and that she heard a new supervisor state that he would receive a bonus if he ran her off. Aside from conclusory allegations, Harvill has presented no summary judgment evidence to substantiate her claims. *See Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 242 (5th Cir. 1993). Moreover, even if we were to accept these allegations, Harvill has not alleged any aggravating factors that would render the harassment so intolerable that a reasonable employee would feel compelled to resign. *See id.*; *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997). Accordingly, Harvill has not raised a genuine issue of material fact as to the second prong of her prima facie case, i.e., whether she suffered an adverse

employment action, and the district court did not err in granting summary judgment to Westward on this claim.

D. Fair Labor Standards Act Claim

Finally, Harvill argues that the district court erred in granting summary judgment for Westward as to her FLSA claim for unpaid overtime because substantial evidence exists that she was required to keep false time sheets, which resulted in her not being paid for approximately 210 hours of overtime. The district court held that Harvill failed to present sufficient evidence that she was not properly compensated for overtime work or that her employer was aware that she was engaging in the unpaid overtime work.

The Fair Labor Standards Act mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207 (a)(1). "'An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.'" *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (alteration in original) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)). "[I]f the 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207.'" *Id.* (quoting *Forrester*, 646 F.2d at 414).

An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that she has performed work for which she alleges she was not

compensated. *See Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). An employee has met her requisite burden of proof

> if [she] proves that [she] has in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate.

*Id.*

In the district court, Harvill's argument against summary judgment on her FLSA claim consisted of her unsubstantiated assertions that French required her to turn in false time sheets, and that Westward "clearly suffered or permitted" her to work overtime. She contended that it was up to the jury to decide who was telling the truth. She offered no factual allegations *at all* to substantiate her claim, and she presented *no* evidence of the amount or the extent of hours she worked without compensation. Moreover, she presented *no* evidence that Westward was aware that she worked overtime hours without compensation. On appeal, Harvill only adds to her argument the assertion that she worked 210 hours of unpaid overtime. Again, she offers absolutely no evidence that she actually worked the hours she alleges, or that Westward was aware that she worked overtime hours without compensation. Harvill has failed to raise a genuine issue of material fact as to whether she went uncompensated for overtime work. Accordingly, the district court did not err in granting summary judgment for Westward on Harvill's FLSA claim.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for Westward on Harvill's sexual harassment, retaliation and Fair Labor Standards Act claims.

18