# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 21, 2013

No. 12-20469
Summary Calendar

Lyle W. Cayce
Clerk

STEPHON WIGGINS,

Plaintiff-Appellant

v.

ST. LUKE'S EPISCOPAL HEALTH SYSTEM,

Defendant-Appellee

---

Appeal from the United States District Court
for the Southern District of Texas
4:10-CV-4209

---

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Stephon Wiggins appeals the district court's grant of summary judgment dismissing his claims for sexual harassment (hostile work environment) and retaliation under Title VII, and his claim for intentional infliction of emotional distress, against St. Luke's Episcopal Health System.[1] For the reasons provided

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] St. Luke's Episcopal Health System was improperly named in the complaint as the Defendant. Appellee's name is "St. Luke's Episcopal Hospital." The district court properly noted that the misnomer does not affect the outcome of the case.

No. 12-20469

in the summary judgment order, and briefly recounted below, we affirm the district court's judgment.

## I. BACKGROUND

Wiggins was an employee of St. Luke's Episcopal Hospital ("St. Luke's") from October 7, 1996 to November 20, 2009. He became a Senior Admitting Interviewer in 2002. Wiggins's position required him to register and admit patients, provide financial assistance to patients, and verify patient insurance information. During the period relevant to this lawsuit, his immediate supervisor was Carlotta Hudson-Creese, and he ultimately reported to the manager of the department, Michelle Hilburn.

On October 13, 2009, Wiggins had a disagreement with a co-worker regarding the accommodations for a patient waiting to be discharged from the admitting area. The next day, Wiggins confronted that co-worker about their disagreement. Hudson-Creese conducted an investigation of the incident and took written statements from witnesses, including Wiggins. Hudson-Creese concluded that Wiggins had acted unprofessionally, and that witnesses had perceived his behavior as threatening. She told Wiggins that his actions were inappropriate, but he disagreed with her assessment of his conduct and refused to acknowledge wrongdoing. Hudson-Creese and Hilburn reported the incident and written statements to the St. Luke's Employee Relations department for guidance. After reviewing the investigative findings and consulting with other St. Luke's personnel, Antrenette L. Carr, an employee relations specialist, decided to place Wiggins on a 90-day probation, effective November 3, 2009.

In a November 4, 2009 letter to William Brosius, the head of his department, Wiggins alleged that other employees had conspired to get him disciplined, and indicated that he believed he had been subjected to sexual harassment. As part of the St. Luke's grievance procedure, Wiggins met with Brosius on November 10 to discuss the circumstances that led to his probation.

2

No. 12-20469

At this meeting, Wiggins reiterated the concerns expressed in the letter: that other employees had conspired to get him disciplined, and that he had been a victim of sexual harassment in the workplace. Brosius found no support for Wiggins's alleged conspiracy and asked Wiggins to provide more information regarding the sexual harassment claim. After the meeting, Brosius determined that the probation decision would stand.

St. Luke's contends that while Wiggins was on probation he continued to act in an unprofessional, disruptive, and insubordinate way to Hudson-Creese and his co-workers. St. Luke's received numerous complaints from co-workers alleging that they were uncomfortable with Wiggins's intimidating behavior. Because Wiggins was on probation at the time of this misconduct, Employee Relations, with Brosius's approval, decided to terminate Wiggins's employment effective November 20, 2009.

After his termination, Wiggins filed a complaint against St. Luke's that he later amended. In his Second Amended Complaint, Wiggins asserted the following claims against St. Luke's: sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and intentional infliction of emotional distress ("IIED") under Texas law. St. Luke's filed a motion for summary judgment seeking dismissal of all claims. After a series of objections and replies, the district court held a hearing on St. Luke's motion for summary judgment in which the parties presented their arguments. On June 22, 2012, the district court granted St. Luke's motion and dismissed all of Wiggins's claims. Wiggins timely appealed.

## II. DISCUSSION

### A.    Standard of Review

We review a grant of summary judgment de novo. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012). Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the nonmovant. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). We may affirm a grant of summary judgment on any ground supported by the record, even one different from that relied on by the district court. *See Reed*, 701 F.3d at 438.

## B.    Sexual Harassment

Wiggins claims that his coworkers sexually harassed him in violation of Title VII. To prevail on this claim, he must prove that the harassment resulted in a hostile or abusive work environment. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). To establish a prima facie case of harassment, a plaintiff must show: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon the protected status; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and, if the harassment is perpetuated by a co-worker, the plaintiff must also show (5) that his employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.*

The district court held that Wiggins has failed to establish a prima facie case because "nothing [he] describes even comes close to the type of severe or pervasive harassment that is actionable in the Fifth Circuit." We agree.

"For sexual harassment to be actionable [under Title VII], it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Harvill*, 433 F.3d at 434 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (alteration in original)). We look at the totality of the circumstances to determine whether an environment is "hostile" or "abusive" under Title VII, including factors such as the frequency and severity of the discriminatory conduct; whether the challenged conduct was physically threatening or humiliating; and whether it

unreasonably interferes with an employee's performance at work. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (citing *Harris*, 510 U.S. at 21-22).

Wiggins was subjectively offended by the few, isolated sexual comments that his female coworkers allegedly made, and the brief moments of physical contact with his female supervisor as detailed in the district court's opinion. However, our prior holdings, as cited by the district court, indicate that such conduct was not so severe or pervasive as to rise to the level of actionable harassment in this circuit. *See e.g.*, *Shepherd*, 168 F.3d at 872, 874 (references to plaintiff's nipples and thighs and multiple instances of touching not severe); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 321-22, 326 (5th Cir. 2004) (sexual comments and touching, including an attempted kiss, not severe or pervasive). Accordingly, we affirm the the district court's grant of summary judgment as to Wiggins's sexual harassment claim.

## C.     Title VII Retaliation

Wiggins also claims that St. Luke's retaliated against him in violation of Title VII for complaining to management about the alleged instances of sexual harassment. We analyze Title VII retaliation claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This framework has three steps: first, a plaintiff must set out a prima facie case of retaliation; if the plaintiff sets out a prima facie case, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for its action; if the defendant provides such a reason, the plaintiff must prove that it is pretextual. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 607-08 (5th Cir. 2005).

No. 12-20469

To establish a prima facie case of Title VII retaliation, a plaintiff must show that he engaged in a protected activity under Title VII, that he was subject to an adverse employment action, and that there was a causal link between the protected activity and the adverse action. *See Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir. 2009). The district court held that Wiggins failed to establish a prima facie case of retaliation because he did not show a causal link between his complaints about the alleged harassment and his subsequent termination. We agree.

Wiggins first mentioned "sexual harassment" to Brosius in a letter sent after the initial incident and discipline that resulted in his termination. The temporal proximity between the protected activity and Wiggins's termination thus owes to Wiggins's delay in informing Brosius of the alleged harassment. Moreover, the evidence does not show that Hudson-Creese knew about the harassment allegations when she asked Employee Relations for guidance as to the appropriate disciplinary steps to take with Wiggins. For these reasons, we find that Wiggins has not established a causal link between his complaint to Brosius and his termination. Accordingly, we affirm the district court's grant of summary judgment as to this claim.[2]

**D.    IIED**

Although Wiggins does not expressly address his IIED claim in his brief, we briefly address it because of his pro se status. In short, the district court correctly noted that if sexual harassment underlies an employee's common law tort claims against his employer, then those claims are preempted under Texas law by the Texas Commission on Human Rights Act, regardless of whether the plaintiff brings an action under the Act. *Waffle House, Inc. v. Williams*, 313

---

[2] If we were to find that Wiggins set forth a prima facie case of retaliation, his claim would nevertheless fail because St. Luke's has articulated a legitimate, nondiscriminatory reason for the termination decision (Wiggins's work conduct), and Wiggins has not offered evidence to prove that this reason was mere pretext.

S.W.3d 796, 803 (Tex. 2010). Accordingly, we affirm the district court's grant of summary judgment as to Wiggins's IIED claim.

## III. CONCLUSION

For the reasons given, we AFFIRM the district court's judgment.