# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 27, 2023

Lyle W. Cayce
Clerk

No. 22-60371

Nena Mauritz; Matthew Mauritz,

*Plaintiffs—Appellants*,

*versus*

Scott Lynn; Hattiesburg Clinic, P.A.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC 2:20-CV-184

Before Stewart, Dennis, and Southwick, *Circuit Judges*.
Per Curiam:[*]

Nena Mauritz, an employee at the Hattiesburg Clinic (the "Clinic"), and her husband, Matthew Mauritz, sued Dr. Scott Lynn and the Clinic, alleging intentional infliction of emotional distress against Dr. Lynn; assault and battery against Dr. Lynn; negligence against the Clinic; loss of consortium against Dr. Lynn and the Clinic; and claims against the Clinic under the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60371

*et seq.* ("Title VII") for discrimination and harassment based on Nena's[1] disability and her sex. The district court granted in part the Clinic's motion for summary judgment, dismissed Nena's claims under Title VII and the ADA, and declined to exercise supplemental jurisdiction over Nena and Matthew's state law claims. The case was remanded to state court, and Nena appealed.[2]

## I.

Nena Mauritz has worked at the Clinic since 2009. From 2010 until 2019, she worked in the Clinic's neurology department; she transferred to the endocrinology department in 2019. Nena also suffers from multiple sclerosis, and has been a patient at the Clinic since 2007. During her time working in the neurology department, Nena was harassed and discriminated against by a doctor in the department, Dr. Scott Lynn.

Beginning around 2012 or 2013, Dr. Lynn started calling Nena "Swiss-cheese brain," referencing her disability. This comment continued throughout her employment in the neurology department, and eventually Dr. Lynn called Nena "Swiss-cheese brain" whenever she made a mistake. In spring 2015, Dr. Lynn said that Nena was "prostituting herself out" in front of two pharmaceutical representatives. Dr. Lynn told another employee to tell Nena "[f]*** you" when that employee next saw Nena.

On May 8, 2015, Nena met with Joy Yates, a Clinic administrator, about Dr. Lynn's conduct. On May 26, 2015, Dr. Lynn remarked to Nena that Nena's daughter would "get pregnant when she is 17 or 18 and then

---

[1] Because Nena and her husband share the same last name, we refer to Nena Mauritz as "Nena" and Matthew Mauritz as "Matthew."

[2] Scott Lynn and the Clinic subsequently appealed the district court's decision to decline to exercise supplemental jurisdiction over the state law claims. That appeal is not before us.

[Nena would] have a baby to love," which Nena stated was a reference to her inability to have more biological children. Following the May 26, 2015, comment, Nena met with Yates and the Clinic's executive director, Tommy Thornton, on May 27, 2015. Nena told Thornton "about names [she] was called and things [ ] Dr. Lynn had said about [Nena's] daughter." Nena expressed some trepidation with Dr. Lynn "knowing anything about [her] talking with the administration," but she asked for assistance to be transferred out of the neurology department, because she did not think that Dr. Lynn would "let her leave." Thornton stated that Dr. Lynn would not be allowed to retaliate, and asked if Nena would be willing to stay for six to eight weeks in the neurology lab.

After being informed that Nena planned to transfer departments, Dr. Lynn created an assistant manager position within the neurology department. Clinic administration informed Nena that the new position would involve less contact with Dr. Lynn. Although Nena interviewed for four different jobs within the Clinic, she either was not offered a position or removed herself from consideration for the job. During this time, Nena felt that she was being "manipulated" by Clinic administrators, because there had been "no effort" to "assist in transferring [her] out of the [neurology] department." In October 2015, Nena took the assistant manager position within the neurology department.

On November 3, 2015, Dr. Lynn texted Nena a picture of Nena from college, where Nena's midriff was showing; Dr. Lynn also showed the picture to other employees within the department, "taunt[ed]" Nena with it, and refused to delete it after Nena asked him to. On other occasions, Dr. Lynn would call Nena "out in front of people when [she] was not wearing heels to work," because "Dr. Lynn knew [Nena] had balance and gait issues from MS." In May 2016, Dr. Lynn touched a button on Nena's shirt and pressed on her left breast. At one point in July 2017, Dr. Lynn commented

that Nena's "high-cost drugs" were increasing the Clinic's healthcare costs; on a different occasion, Dr. Lynn handed Nena a plastic bag and told her to put the bag over her head and to take a deep breath. The next month, after Nena got her words mixed up while talking to Dr. Lynn, he asked Nena "[W]hat's wrong with you?" and then stated, "[N]ever mind, we all know you have something wrong with your brain." During this time, Nena met with Yates monthly, and brought up her issues with Dr. Lynn's behavior, although she told Yates not to directly confront Dr. Lynn. However, Nena believed that Dr. Farrell, another Clinic doctor, would speak to Dr. Lynn about his behavior, and keep Nena out of the spotlight by focusing on Dr. Lynn's treatment of a former employee, Kristen Fischer.

On July 16, 2019, when Nena was standing in the doorway of another employee's office, with her back to the door, Dr. Lynn pushed her. Nena was able to catch herself on a chair. When she turned to her right, she saw Dr. Lynn walking past her, putting his arms out, and saying, "I'd love to see lopsided Nena fall." Nena told her co-worker Julia Starrett about the incident. On July 25, Kristy Gould spoke with Nena. Nena said that she was "not interested in pursuing anything because [she] had no faith in [the] administration[.]" However, in August 2019, after Starrett reported Dr. Lynn's conduct to Clinic administration through a third-party survey, the Clinic investigated the July 16, 2019, pushing incident. The Clinic Board of Directors suspended Dr. Lynn for a week, withheld one month of his salary, required him to complete an independent, professional behavioral counseling program, and required him to participate in ongoing outpatient therapy. After further investigation, the Clinic imposed additional penalties, including moving Dr. Lynn's practice away from the main Clinic building and requiring him to pay the costs of the investigation and any monetary settlement paid. Nena was placed on administrative leave with pay, and she interviewed for and accepted a manager position in the endocrinology department. After the

July 16, 2019, pushing incident, Nena did not suffer any further harassment.

Nena filed an EEOC charge on January 13, 2020, alleging that Dr. Lynn verbally, physically, and sexually harassed her. She received a Notice of Right to Sue on January 28, 2021. On July 2, 2020, Nena and Matthew filed suit against Dr. Lynn and the Clinic in Mississippi state court, for claims arising out of the multiple incidents of alleged harassment by Dr. Lynn. The Clinic removed the case to federal court on October 2, 2020. On May 18, 2021, Nena and Matthew filed an amended complaint, alleging the following: intentional infliction of emotional distress against Dr. Lynn; assault and battery against Dr. Lynn; negligence against the Clinic; loss of consortium against Dr. Lynn and the Clinic; and claims against the Clinic under the ADA and Title VII for discrimination and harassment based on Nena's disability and her sex. The district court granted the Clinic's motion for summary judgment as to Nena's ADA and Title VII claims, reasoning that Nena failed to carry her burden of proving that the Clinic failed to take prompt remedial action as to her ADA claim, and that her Title VII claim was untimely because she failed to point to a specific act of sexual harassment that occurred during the 180-day limitations period.

## II.

This court reviews a district court's decision to grant summary judgment de novo, using the same standards the district court used to decide the motion. *See Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Boudreaux v. Swift Transp. Co.*, 402 F.3d

536, 540 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 250, 251–52 (2015)).

## III.

### A. Nena's ADA Claim

Under 42 U.S.C. § 2000e-5(e)(1), a charge of discrimination must be filed within 180 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1); *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). The 180-day period for filing an EEOC charge "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000) (citations omitted). Nena filed her EEOC charge on January 13, 2020, so only acts that occurred on or after July 15, 2019, fall within the statutory time period.

Unlike an intentional discrimination claim, however, which focuses on a specific discriminatory act, "a hostile environment claim arises from the 'cumulative effect of individual acts,' some of which 'may not be actionable on [their] own.'" *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583–84 (5th Cir. 2020) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). "That means that 'the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement.'" *Id.* at 584 (quoting *Heath v. Bd. of Supervisors for Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), *as revised* (Mar. 13, 2017)). Therefore, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

The continuing violation doctrine applies here because Nena points to a pattern of conduct related to her disability beginning in 2012 and continuing

No. 22-60371

until the July 16, 2019, pushing incident. Because the July 16, 2019, pushing incident occurred within the prescription period, Nena's hostile work environment claim is timely. On appeal, the Clinic argues that the district court erroneously determined that the violation was continuing and without an intervening act. We disagree. The Clinic does not point to any evidence of an intervening cause, and it does not meaningfully contest Nena's version of events—wherein Dr. Lynn frequently and often made remarks about her disability throughout her time working in the neurology department, ultimately culminating in the July 19, 2019, pushing incident. Nena has adequately demonstrated that the continuing violation doctrine applies to her ADA hostile work environment claim.

In addition to the claim being timely, Nena must show that: "(1) [she] belongs to a protected group, (2) was subject to unwelcome harassment (3) based on [her] disability, (4) which affected a term, condition, or privilege of employment, and (5) [the Clinic] knew or should have known of the harassment and failed to take prompt, remedial action." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470–71 (5th Cir. 2021) (internal citation omitted). To determine "whether harassment is sufficiently pervasive or severe," a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation omitted).

The district court relied on the fifth element—failure to take prompt remedial action—to determine that Nena failed to meet her burden. The district court concluded that the Clinic took prompt remedial action to prevent Dr. Lynn from further harassing Nena after the July 16, 2019, pushing incident, demonstrated by their investigation, and culminating in Dr. Lynn's reprimand. Further, after meeting with Nena following the initial investigation, the Clinic continued investigating and imposed additional

penalties on Dr. Lynn. The district court was unpersuaded by Nena's argument that the Clinic failed to take any action *prior* to the pushing incident, because although Nena did report the harassment, it was her "uncontroverted testimony" that she asked the Clinic not to confront Dr. Lynn about his behavior.

"A defendant may avoid [ADA] liability when harassment occurred but the defendant took 'prompt remedial action' to protect the claimant." *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014) (internal quotation omitted). "Whether an employer's response to discriminatory conduct is sufficient will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399–400 (5th Cir. 1996) (internal quotation and citation omitted). An "employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment." *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 615–16 (5th Cir. 1999) (internal quotation marks and citation omitted).

We have long recognized that to demonstrate that an employer has failed to take prompt remedial action, the employee must first show that she took "advantage of corrective opportunities provided by the employer." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 437 (5th Cir. 2005) (quoting *Woods v. Delta Beverage Group*, 274 F.3d 295, 300 n.3 (5th Cir. 2001)). "Nonetheless, if an employee believes that bringing a subsequent [] harassment complaint would be futile, or 'it becomes objectively obvious that the employer has no real intention of stopping the harassment, the harassed employee is not obligated to go through the wasted motion of reporting the harassment.'" *Id.*

Construing all inferences in favor of Nena, we cannot say that the

evidence "is so weak or tenuous" as to whether the Clinic took prompt remedial action to protect her before the July pushing incident that summary judgment is warranted in the Clinic's favor.[3] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotation marks and citation omitted).   There is a factual dispute over whether Nena directed the administration to not act, or if she merely wanted her name to be left out of the conversation.   The district court concluded that it was Nena's "uncontroverted testimony that each time she reported Dr. Lynn's behavior she asked the Clinic not to confront Dr. Lynn about his behavior."   The district court also pointed to Nena's statements that she did not want Dr. Lynn "approached about his behavior specifically directed towards [her]" and that she did not want to "formally report" Dr. Lynn.  But the district court did not view the facts and inferences in the light most favorable to Nena, because Nena stated on several other occasions—including in evidence submitted by the Clinic itself—that she was primarily concerned about "Dr. Lynn *knowing* anything about [her] talking with administration." Nena had endorsed a plan proposed by Yates to have Dr. Lynn confronted about his behavior, without relating the complaints back to Nena—rather, the comments would be focused on a different employee's complaints to protect current employees.  Nena was "under the impression that Dr. Farrell [the doctor who was going to speak with Dr. Lynn] knew of all of the complaints, including [Nena's]."

It also appears that Nena's reluctance to explicitly seek corrective opportunities may have been due to a fear of retaliation by Dr. Lynn—fear that was not unfounded, as Thornton stated that "Dr. Lynn would not be

---

[3] We agree with the district court that the summary judgment record supports the conclusion that the Clinic took prompt remedial action to prevent further harassment after learning of the July 16, 2019, pushing incident.  Nena does not meaningfully contest this issue on appeal.

allowed to retaliate," with regard to Nena's concerns about talking with administration, and Yates stated that she wanted to inform Dr. Lynn "separately" about Nena's initial request to transfer, ostensibly to manage his reaction. Nena's fears were confirmed when Dr. Lynn purportedly created an assistant manager position specifically for Nena in neurology once he found out she was seeking a transfer. Later, while still trying to find a job to transfer to, Nena felt as though she was "being manipulated" and that "there seemed to be no effort in [her] opinion to assist in transferring me out of the department." Ultimately, Nena accepted the assistant manager position, but only after feeling as though the administration[4] was not putting in effort to help her and was sending her to interview for positions for which Nena was unqualified. It is therefore reasonable to infer that Nena believed that bringing a direct complaint against Dr. Lynn would be futile, because the Clinic had no "real intention of stopping the harassment." *See Harvill*, 433 F.3d at 437.

We therefore REVERSE and REMAND as to Nena's ADA claim.[5]

## B. Nena's Title VII Claim

Under 42 U.S.C. § 2000e-5(e)(1), a charge of discrimination must be

---

[4] Indeed, the minutes of the November 25, 2019, board meeting create another layer of ambiguity. Dr. Lauderdale, after learning of Dr. Lynn's conduct prior to the July 16, 2019, pushing incident from Nena, indicated that "in her opinion the matter had been mishandled by Administration . . . Mr. Thornton noted the additional information provided to Dr. Lauderdale had also been provided to him, Lisa Freeman, and Dr. Farrell. When questioned, these employees indicated the information had not been brought up over the last five years and not reported to Administration." Taking all reasonable inferences in favor of Nena, her request that she not be named specifically may not be the primary reason that the administration failed to act. It is possible that Nena's complaints never made their way up the administrative ladder.

[5] Although the Clinic also argues that we can alternatively affirm because the conduct was not sufficiently severe or pervasive, we remand so that the district court can consider this argument in the first instance.

filed within 180 days "after the alleged unlawful employment practice occurred." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). The district court dismissed Nena's Title VII claim as time barred because she failed to identify a specific act of sexual harassment that occurred during the 180-day limitations period prior to the filing of her EEOC charge. We agree with the Clinic that Nena waived the issue by inadequately briefing it. A party can waive an argument by inadequately briefing it by, *inter alia*, failing to "offer any supporting argument or citation to authority" or to "identify relevant legal standards and any relevant Fifth circuit cases," or by failing to offer record citations. *See, e.g., JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016); *United States v. Rojas*, 812 F.3d 382, 407 n.15 (5th Cir. 2016) (citing *United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010)). Here, Nena does not provide any meaningful argument apart from the assertion that her testimony "was not speculative." Beyond that, she does not provide any record citations or relevant caselaw. She has therefore failed to adequately brief the issue and has waived it. We therefore AFFIRM the district court's grant of summary judgment on Nena's Title VII claim.

## IV.

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.