# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60190

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2016

Lyle W. Cayce
Clerk

AMBREA FAIRCHILD,

      Plaintiff–Appellant,

v.

ALL AMERICAN CHECK CASHING, INCORPORATED, a Mississippi Corporation,

      Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

ON PETITION FOR REHEARING

Before PRADO, OWEN, and HAYNES, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Treating Appellant's Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED, but we withdraw the prior opinion, 811 F.3d 776 (5th Cir. 2016), and substitute the following, which is amended only as to Part II.A:

Ambrea Fairchild sued her former employer, All American Check Cashing, Inc. ("All American"), alleging it violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), by firing her because she was pregnant. She also

No. 15-60190

alleged that All American violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), by failing to pay her overtime. After the close of Fairchild's case in chief at trial, the district court entered judgment in favor of All American on both claims. Finding no error, we affirm.

## I. BACKGROUND

In December 2011, Ambrea Fairchild was hired by All American, a Mississippi-based loan and check cashing company. After a brief training period, Fairchild started work as a manager trainee at All American's store in Hattiesburg, Mississippi. She was paid hourly, and her responsibilities included cashing checks, issuing loans, and making reminder and "past due" phone calls to assist with debt collection.

All American promoted Fairchild in March 2012 to manager, a salaried position. Her duties largely stayed the same, although she also became responsible for training other employees. During her time as manager, All American issued her several written complaints regarding her performance. In May 2012, she received a write up after a register drawer was missing one hundred dollars. In July 2012, she received a citation for failing to follow instructions after she kept the store open past All American's prescribed closing time. The next month she received a written warning related to her "general inefficiency." She received three more warnings in the first half of September 2012. One warning cited her failure to train manager trainees and another indicated she needed to "slow down and pay attention" when processing transactions. All American also issued a "final warning" for "general inefficiency," which related to the accrual of "bad debt" at the store and her failure to issue a sufficient number of loans.

In late September 2012, All American demoted Fairchild back to the manager trainee position. Fairchild testified at trial that the demotion was justified because she needed "to work on [her] weaknesses." Her manager

2

became Daniel Fowler, an individual that Fairchild had previously trained. While acting as her manager, Fowler issued Fairchild performance-related warnings, which included a December 2012 document informing Fairchild that All American had "zero tolerance" for "threatening phone calls" and "poor attitudes." Fowler also testified that Fairchild caused low morale at the Hattiesburg store. The issue with store morale led to problems with customer service that, in turn, resulted in excessive customer complaints. Fowler and Fairchild also had a strained working relationship in part because Fairchild often complained about him to their supervisors. As Fairchild admitted in her testimony, the two would frequently argue over "minor things," and she would report Fowler's actions to her then-supervisors. As a result of these issues, Fowler informed his new supervisor, Mark Hendrix, that Fairchild was interfering with his ability to effectively manage the Hattiesburg store.

In October 2012, Fairchild learned she was pregnant. She told her then-supervisor, Mandy Hearn, and her manager, Fowler, of her pregnancy in late November 2012. On January 23, 2013, All American terminated Fairchild. Two days earlier, Mark Hendrix, who held another position in All American, became acting supervisor of the Hattiesburg store.

All American's overtime policy prohibited hourly employees from working overtime without prior approval from a manager or supervisor. Further, its policy required that all employees accurately report their hours in its designated timekeeping system. During Fairchild's time as manager trainee, All American paid her for the overtime that it authorized and that she recorded in its timekeeping system. Fairchild, however, testified that she also worked additional overtime that she did not report through the specified timekeeping system and for which she was not paid.

In May 2013, Fairchild sued All American in federal district court. Her complaint alleged that All American terminated her because of her pregnancy

No. 15-60190

in violation of Title VII and failed to pay her overtime wages in violation of the FLSA. Before trial, the parties agreed that the FLSA claim would be decided by the judge and the Title VII claim would be decided by a jury, although they would present both claims at a single trial. The trial took place in February 2015. After the close of Fairchild's case in chief, the district court granted All American's motion for judgment in its favor on both claims. Fairchild timely appealed.

## II. DISCUSSION

### A.    The FLSA Claim

The parties agreed to a bench trial for the FLSA claim. In a bench trial, a judgment entered after the plaintiff's case in chief is appropriately decided under Federal Rule of Civil Procedure 52(c),[1] which provides for a judgment on partial findings.[2] *Bursztajn v. United States*, 367 F.3d 485, 488 (5th Cir. 2004). When the district court enters a Rule 52(c) judgment, we review its factual findings for clear error and its conclusions of law de novo. *Id.* at 488–89.

---

[1] In this case, All American incorrectly moved for a judgment as a matter of law under Federal Rule of Civil Procedure 50 as to both the FLSA claim, which was presented to the judge, and the Title VII claim, which was not. The district court proceeded to analyze both claims under Rule 50's standard, which requires considering the evidence in the light most favorable to Fairchild. *See* Fed. R. Civ. P. 50(a); *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). However, Rule 50's standard does not apply to bench trials and, as such, Rule 52(c) was the proper vehicle for rendering judgment as to the FLSA claim. *See Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 897 n.1 (5th Cir. 2009) (per curiam). We nonetheless conclude that a remand is unnecessary. The error did not prejudice Fairchild insofar as Rule 50's standard favored her. *See id.* Rule 52(c), unlike Rule 50, does not require the district court "to draw any inferences in favor of the non-moving party" and permits the court to make a determination "in accordance with its own view of the evidence." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006); *see* Fed. R. Civ. P 52(c). In addition, "the purposes behind [Rule 52] have been effectuated" here: the district court's ruling, which canvassed the evidence adduced at trial, (1) "engender[ed] care on the part of the trial judge in ascertaining the facts" and (2) "[made] possible meaningful review in the appellate courts." *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 415 (5th Cir. 1981).

[2] Prior to 2007, a judgment under Rule 52(c) was referred to as a "judgment as a matter of law." *See* Fed. R. Civ. P. 52(c) advisory committee's note to 2007 amendment. However, in 2007, Rule 52(c) was amended to "refer[] only to 'judgment,' to avoid any confusion with a Rule 50 judgment as a matter of law in a jury case." *Id.*

No. 15-60190

Under the FLSA, an employer must pay covered employees overtime compensation that is "not less than one and one-half times [that employee's] regular rate" for all hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1). "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (alteration in original) (quoting *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)). An employee, however, cannot prevail on an FLSA overtime claim if that "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work." *Id.* (quoting *Newton*, 47 F.3d at 748); *see also Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972).

In *Newton v. City of Henderson*, the plaintiff, a police officer, brought an FLSA claim for overtime against his employer, the City of Henderson (the "City"). 47 F.3d at 747. During the period at issue, the plaintiff was assigned to work for a task force with the U.S. Drug Enforcement Agency, although the City remained responsible for his salary. *Id.* The City's personnel policy required that all employees "obtain approval prior to working overtime," *id.*, and report those hours on a specified payroll form, *id.* at 749. The City paid the plaintiff for all of the hours he reported on the payroll forms; it did not pay him for the unauthorized overtime that he failed to properly report. *Id.* at 748.

The plaintiff in *Newton* argued that despite his failure to follow protocol, he was owed compensation for unpaid overtime because "he reported his activities to [the City] on a daily basis," although not the specific number of hours worked, and that, as a result, the City had constructive knowledge of his overtime hours. *Id.* After the trial court granted judgment for the plaintiff, we reversed and rendered judgment in favor of the City. *Id.* at 746–47. We

5

emphasized that his employer had expressly ordered the plaintiff not to work overtime; the plaintiff had ignored the procedures for reporting such overtime; and no other evidence established that his supervisors should have known he was required to work overtime. *Id.* at 749–50. We also highlighted that this was not a case in which the defendant "encouraged or forced [the plaintiff] to submit incorrect time sheets." *Id.* at 750.

Fairchild, on appeal, alleges All American failed to pay her overtime for the two periods in which she worked as a manager trainee—December 2011 through March 2012 and September 2012 through January 2013. During this time, Fairchild was paid for the overtime hours she reported through All American's timekeeping system. However, she now seeks payment for the alleged overtime hours that she worked but did not report to All American. The district court denied overtime compensation for both periods. We hold that it did not clearly err in not accepting Fairchild's assertions that All American had actual or constructive knowledge that she worked overtime for which she had not been paid.

With regard to the first period as manager trainee, Fairchild—like the plaintiff in *Newton*—ignored her employer's policy and procedures: she neither sought authorization to work such overtime nor reported the alleged hours through All American's timekeeping system. *Id.* at 749. Indeed, Fairchild testified that she intentionally failed to report her unauthorized overtime specifically because All American prohibited such overtime. To hold that she is entitled to deliberately evade All American's policy would improperly deny All American's "right to require an employee to adhere to its procedures for claiming overtime." *Id.*; *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its

obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA.").

Fairchild counters that her computer usage reports, which allegedly show she was working after "clocking out," proves that All American had constructive knowledge that she was working overtime. We find this argument unavailing. Although All American could have potentially discovered that she was working overtime based on the usage reports, "the question here is whether [the employer] should have known." *Newton*, 47 F.3d at 749. The district court did not clearly err in holding that mere "access" to this information is insufficient for imputing constructive knowledge. *Id.*

Lastly, although not dispositive, we note the absence of evidence suggesting that All American required Fairchild to submit falsified time records that underreported her hours. All American instructed her not to work overtime other than that for which she was approved. Fairchild's subjective belief that, as she testified, All American "permitted [her] to get the job done" does not establish that it implicitly approved or required such overtime. *See id.* at 748–49 (finding that an employee was not approved to work overtime despite being instructed to "go out and do the job" when the supervisors had expressly told the employee not to work unauthorized overtime hours). Accordingly, Fairchild cannot prevail on her FLSA claim for overtime compensation for hours that she deliberately failed to report in violation of All American's policy and that All American otherwise did not have reason to believe she had worked.

With regard to the second period as manager trainee, Fairchild's only evidence was her unsubstantiated testimony that she worked approximately ten hours of overtime a week and was not paid overtime for this period. Unlike with the first period, she did not seek to introduce any computer usage reports. The district court found that Fairchild "had failed to make a case" that she was

improperly denied overtime compensation. In light of the evidence introduced, the district court did not clearly err in finding that Fairchild did not prove that she had in fact worked overtime during this period and had not been paid for it. *See, e.g.*, *Ihegword v. Harris Cty. Hosp. Dist.*, 555 F. App'x 372, 375 (5th Cir. 2014) (rejecting an FLSA overtime claim where the employee's only evidence was her "unsubstantiated assertions speculated from memory . . . that she actually worked overtime for which she was not compensated").

## B.     The Title VII Claim

The parties agreed to a jury trial for Fairchild's pregnancy-based sex discrimination claim under Title VII. Where, as here, the district court grants the defendant's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 after the close of the plaintiff's case in chief, "[w]e review the district court's ruling *de novo*, applying the same Rule 50 standard as did the district court." *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 362 (5th Cir. 2004). Rule 50 entitles the movant to judgment as a matter of law when "a party has been fully heard on an issue . . . and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). Evidence is legally insufficient "when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict." *Brennan's Inc.*, 376 F.3d at 362. Therefore, "[i]n considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions." *Id.*

Title VII, in pertinent part, makes it unlawful for an employer "to discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). As amended by the first clause of the PDA, the terms "because

of sex" "includ[e], but [are] not limited to, 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003) (quoting 42 U.S.C. § 2000e(k)). "A claim brought under the PDA is analyzed like any other Title VII discrimination claim." *Id.* at 578. Thus, for a pregnancy-based sex discrimination claim, an employer is liable for disparate treatment, which occurs when the employee's "protected trait actually motivated" the employer to take the adverse employment action. *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). A "plaintiff can prove disparate treatment either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)]." *Id.*

"Direct evidence is evidence which, if believed, proves [disparate treatment] without inference or presumption." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Fairchild's only direct evidence concerns alleged statements made by Wendy Lambert, a manager of All American's store in Laurel, Mississippi. Specifically, Fairchild at trial sought to testify that while Fairchild and Lambert were having lunch after Fairchild's termination, Lambert said that "[Fairchild's] pregnancy was related to [her] termination." All American objected to this testimony, arguing that such evidence was inadmissible hearsay. The district court sustained the objection, explaining the out-of-court statements, which were made during a social occasion, were not subject to the party-opponent exception provided for in Federal Rule of Evidence 801(d)(2).

On appeal, Fairchild contends that the district court erred and that Lambert's statements are admissible under Rule 801(d)(2)(D). We "review the trial court's evidentiary rulings under an abuse of discretion standard." *Curtis*

*v. M&S Petroleum, Inc.*, 174 F.3d 661, 667 (5th Cir. 1999). Rule 801(d)(2)(D) provides that a statement is not hearsay when it is "offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). This exception does not apply to an employee's statement concerning a termination decision when that employee "had nothing to do with" that decision. *Staheli v. Univ. of Miss.*, 854 F.2d 121, 127 (5th Cir. 1988). Such statements do not "concern a matter within the scope of" the employment relationship and instead are "made in [that employee's] capacity as wiseacre only." *Id.*

The district court did not abuse its discretion in excluding the evidence regarding Lambert's alleged statements. Fairchild failed to present any evidence that Lambert was involved in All American's decision to terminate her. The mere fact that Lambert was a managerial employee at a different All American location than where Fairchild worked does not establish that her statements were within the scope of Lambert's employment relationship with All American. *See id.* (citing *Hill v. Speigel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983)).

In the absence of direct evidence, Fairchild may still prove disparate treatment if her circumstantial evidence satisfies *McDonnell Douglas*'s burden-shifting framework. *Young*, 135 S. Ct. at 1353. Under this framework, the plaintiff initially has the burden to prove a prima facie case of discrimination. *Id.* If the plaintiff carries her burden, the employer has the opportunity to produce a "legitimate, nondiscriminatory reason" for the disparate treatment. *Id.* at 1345 (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the employer articulates such a reason, the plaintiff then has 'an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [*i.e.*, the employer] were not its true reasons,

No. 15-60190

but were a pretext for discrimination.'" *Id.* (alteration in original) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

As the district court found, Fairchild's only circumstantial evidence is the temporal proximity between All American learning that she was pregnant and her termination in late January 2013. The parties dispute the appropriate time frame by which to measure the temporal proximity. All American claims that the proximity is two months—the time lapse between Fairchild initially informing her supervisor and manager of her pregnancy in late November 2012 and her firing. Fairchild contends that the proximity is two days—the time lapse between Mark Hendrix becoming acting supervisor of the Hattiesburg store and Hendrix instructing Fairchild's manager, Fowler, to fire her.

Even assuming without deciding that a reasonable trier of fact could find that Fairchild established her prima facie case, we hold that the district court was correct to conclude that Fairchild failed to rebut All American's legitimate, nondiscriminatory reasons. As the district court recognized, the record is "replete" with legitimate, non-discriminatory reasons for Fairchild's termination: her contentious relationship with her manager; the problems she caused regarding store morale and customer service; and her repeated performance-related problems that resulted in warnings, including a citation issued after she informed All American of her pregnancy. Consequently, under *McDonnell Douglas*, the burden shifted back to Fairchild, which, in the context of a Rule 50 motion, required Fairchild to show that a reasonable trier of fact could conclude that All American's offered reasons were pretextual. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). In order to meet this burden, Fairchild "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Id.*

Yet, as noted, Fairchild's only evidence is temporal proximity. This Circuit has not yet addressed whether the temporal proximity between an

11

employer learning of the plaintiff's pregnancy and the challenged employment action can be sufficient to prove pretext. In the context of other employment discrimination claims, we have held that while suspicious timing may be evidence of pretext under *McDonnell Douglas*, such "[t]iming standing alone is not sufficient absent other evidence." *Boyd v. State Farm Ins. Companies*, 158 F.3d 326, 330 (5th Cir. 1998); *accord Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) (disability discrimination claim under the Americans with Disabilities Act). In *Burton*, for instance, the plaintiff suffered a work-related injury that she claimed rendered her physically disabled. 798 F.2d at 226. In assessing her claim under *McDonnell Douglas*, we acknowledged that the temporal proximity between the plaintiff revealing her disability to her employer and her termination, by itself, was not enough to establish pretext. *Id.* at 240. Our sister circuits, relatedly, have recognized that the temporal proximity between the plaintiff disclosing her pregnancy and her termination "cannot alone prove pretext." *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006); *see also Govori v. Goat Fifty, L.L.C.*, 519 F. App'x 732, 734 (2d Cir. 2013); *Borwick v. T-Mobile W. Corp.*, 535 F. App'x 650, 652 (10th Cir. 2013). Moreover, we find instructive this Court's reasoning regarding temporal proximity as applied to retaliation claims: to allow the plaintiff to prove pretext based solely on temporal proximity "would unnecessarily tie the hands of employers" after the protected conduct or, in this case, the protected status is disclosed. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

Therefore, with respect to evidence of timing, we decline to adopt a different analysis for pregnancy-based sex discrimination claims under Title VII. Although the temporal proximity between the employer learning of the plaintiff's pregnancy and her termination may support a plaintiff's claim of pretext, such evidence—without more—is insufficient. Because the only

circumstantial evidence in this case was temporal proximity, All American was entitled to judgment as a matter of law after it established legitimate, nondiscriminatory reasons for Fairchild's termination.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment in favor of All American on the FLSA claim and the Title VII claim.