# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2024

Lyle W. Cayce
Clerk

————————

No. 23-50524

————————

Robert White, *on behalf of himself and a class of those similarly situated*,

*Plaintiff—Appellee*,

*versus*

Patriot Erectors, L.L.C.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-884

_____

Before Elrod, Ramirez, *Circuit Judges*, and Ashe, *District Judge*.[*]

Barry W. Ashe, *District Judge*:[†]

Plaintiff Robert White filed suit against his former employer, Patriot Erectors, LLC ("Patriot"), for failing to pay him overtime compensation required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*[1] Following a bench trial, the district court found Patriot liable under

_____

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] Although styled as a collective action, the claims pertain only to White.

No. 23-50524

the FLSA and awarded White unpaid overtime compensation, liquidated damages, and attorney's fees.  On appeal, Patriot argues that the district court erred in finding that White presented sufficient proof of a FLSA violation and attempts to challenge the amount of damages awarded.  We AFFIRM.

## I.  BACKGROUND

Patriot, a steel fabrication and erection business, hired White as an entry-level welder in the summer of 2010 and, over the next couple of years, promoted him to line leader, shop foreman, and finally production manager over its fabrication shop.  In each of these roles, White was paid at an hourly rate and was responsible for clocking-in and -out of work.[2]  Patriot terminated White in 2019.

As production manager, White worked long hours—well beyond a typical 40-hour workweek—in order to keep up with Patriot's growing business.  The number of employees under his supervision "dramatically increased" over the years, expanding from roughly 30 employees to 120 employees.  And, around 2014 or 2015, Patriot added a night shift to help with "hot work"—a term used at Patriot to refer to jobs received around 3 or 4 p.m. that needed to be fabricated by the next day.  Although Patriot added a night-shift supervisor, White remained the only production manager of the fabrication shop, making him responsible for managing aspects of both the day shift and night shift.  Thus, while day-shift employees typically clocked-in at 6 a.m. and clocked-out at 5 p.m., White usually worked until "at

---

[2] While some employees physically clocked-in and -out of work using the shop's kiosks, White, as production manager, would "clock in and clock out" of work by keeping track of his arrival and departure times in an Excel spreadsheet on his computer.  He then forwarded his time sheets to one of the shop's administrators, who submitted his time to the payroll department.

least" 6:00–6:30 p.m., and sometimes as late as 10 p.m., so he could assist with the transition from the day shift to the night shift. Indeed, White often worked "60-plus" hours per week "on the clock." The parties do not dispute that Patriot compensated White for all the hours he reported.

But White also sent and received work-related emails outside of the hours he spent clocked-in at work. According to White, in his last couple of years at Patriot, he received approximately 250 emails per day. To deal with all these emails, he would filter through them while he was clocked-in to determine which ones most demanded his attention and would save the others for when he got home that night. On these evening emails, White often copied members of Patriot's upper management team, including his direct supervisor, at first Eric Herzog and then Mickey Swor; Patriot's chief executive officer, Parley Dixon; and Patriot's general manager, Ted Turner.

White also received calls late in the evening on his Patriot-issued cellphone. In fact, White estimated that only one-fourth of his time spent working off-the-clock was spent reviewing and responding to emails, while the rest of his time was spent on phone calls. During his employment as production manager, White lived 45 minutes to an hour away from the shop and often initiated and received calls during his commute.

In addition to the phone calls and emails sent and received while away from the fabrication shop, White also monitored the shop by remotely logging on to Patriot's camera system using his Patriot-issued laptop computer to oversee shop productivity and new hires.

The amount of time White spent working off-the-clock "got worse" in 2019 because Patriot opened a new facility in Rio Vista and acquired Trinity Steel, another steel fabrication company. Indeed, in 2019, White began staying at a trailer on Patriot's property (but away from the facility) a couple of days a week rather than drive the hour-long commute home.

However, even when he stayed at the trailer, he still answered phone calls and sent emails off-the-clock.

White claimed that he did not report any of the work he performed off-premises. Instead, he believed that his "time sheet was for when [he] showed up 'til when [he] left Patriot facilities." Patriot never trained White on the applicable wage and hour laws. White would joke with Herzog, his supervisor, about how much more money he could make if he "truly claimed everything that [he] worked," and the two of them would "commiserate about being Patriot lifers." Herzog admitted to knowing that there was a period of time in which White had worked overtime and claimed to have not been paid. In particular, Herzog admitted that at some point, White told him that he was not reporting all of his time, and Herzog told White to report it. Herzog did not relay this to Patriot's HR department or otherwise attempt to remedy the situation. And both Herzog and Dixon admitted to knowing that White sent emails from home.

After his termination, White returned his cellphone and laptop to Patriot and lost access to his Patriot email. Once this lawsuit was filed, White requested his email and phone records through discovery, but Patriot did not produce any phone records and only produced White's emails from August 2017 through August 2018, thus excluding the emails from his last 14 months of employment. White testified that even the emails that were produced were not representative of all of the emails he sent in 2018.

After a two-day bench trial, the district court entered its findings of fact and conclusions of law, holding that Patriot owed White unpaid overtime compensation. In particular, the district court concluded that White established a *prima facie* case for unpaid overtime compensation based on the following findings of fact: (1) White worked overtime hours without compensation, (2) White's estimation that he worked 8 hours off-the-clock

each week was a just and reasonable inference, and (3) Patriot had both actual and constructive knowledge that White worked off-the-clock without compensation. The district court then concluded that Patriot did not show that White's inference was unreasonable, and that Patriot's violation of the FLSA was willful. It awarded White $40,575.68 in uncompensated overtime, $40,575.68 in liquidated damages, and $81,151.36 in attorney's fees. Patriot appeals the judgment.

## II.  STANDARD OF REVIEW

"Following a bench trial, we review a district court's findings of fact for clear error and its legal conclusions de novo." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 242 (5th Cir. 2016) (citing *Bd. of Trs. New Orleans Emp'rs Int'l Longshoremen's Ass'n v. Gabriel, Roeder, Smith & Co.*, 529 F.3d 506, 509 (5th Cir. 2008)). "A factual finding is clearly erroneous only if, 'based upon the entire record, we are left with the definite and firm conviction that a mistake has been committed.'" *Fraser v. Patrick O'Connor & Assocs., L.P.*, 954 F.3d 742, 745 (5th Cir. 2020) (quoting *S. Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 128 (5th Cir. 1993)). "Thus, when the district court's account of the evidence is plausible, reversal is improper, even if the reviewing court 'would have weighed the evidence differently.'" *Id.* (quoting *S. Travel Club*, 986 F.2d at 128–29). "Giving greater weight to certain testimony 'can virtually never be clear error' because 'only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

## III. DISCUSSION

### A. The FLSA and the *Mt. Clemens*[3] Burden-Shifting Framework

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Simply put, "[u]nder the FLSA, an employer must pay overtime compensation to its non-exempt employees who work more than forty hours a week." *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 272 (5th Cir. 2020) (citing *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004)).

A plaintiff's burden of proving that he performed uncompensated overtime work is "'easily discharged' where an employer keeps accurate records of an employee's hours, as the FLSA requires." *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 362 (5th Cir. 2023) (alteration omitted) (quoting *Mt. Clemens*, 328 U.S. at 687). However, in *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court "recognized that the FLSA's recordkeeping regime may inadvertently incentivize employers to 'fail to keep proper records' because those records may later aid a plaintiff in proving overtime liability." *Id.* at 362 (alteration omitted) (quoting *Mt. Clemens*, 328 U.S. at 687). "Such a perverse incentive would 'penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work,' thereby contravening 'the remedial nature of the FLSA and the great public policy which it embodies.'" *Id.* (alterations omitted) (quoting *Mt. Clemens*, 328 U.S. at 687). Thus, the Supreme Court established the following burden-shifting framework, which is applicable in instances in which

---

[3] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

"an employer has failed to keep records, or where such records are 'inaccurate or inadequate,'" *id.* (quoting *Mt. Clemens*, 328 U.S. at 687):

> An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.
>
> Once the employee establishes a prima facie case, the burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."

*Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (quoting *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005), and citing *Mt. Clemens*, 328 U.S. at 687–88) (other internal citations omitted). "Under this relaxed standard, a plaintiff need not prove 'the precise extent of uncompensated work,' though he must present more than 'unsubstantiated assertions.'" *Flores*, 73 F.4th at 362 (first quoting *Mt. Clemens*, 328 U.S. at 687, and then quoting *Harvill*, 433 F.3d at 441).

With regard to the first step, "the plaintiff must show that he was 'employed' by [his employer] during the periods of time for which he claims unpaid overtime." *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). "He was employed during those hours if the [employer] had knowledge, actual or constructive, that he was working." *Id.* (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)).

The parties do not dispute either the existence of an employee-employer relationship during the relevant time period or that White's activities

were covered by the FLSA. Patriot disputes only that it violated the FLSA's overtime wage requirements and the amount of overtime compensation due. We address each of these questions in turn.

## B. FLSA Liability

As to liability, Patriot argues on appeal that: (1) White was required to present evidence that Patriot instructed him not to record his off-the-clock time or stopped him from inputting his time; (2) White's claims are deficient as a matter of law because he did not follow the company's rules for reporting time and did not bring his failure to record his time to the company's attention; and (3) White was required to show that Patriot knew he was not being compensated for his off-the-clock time, but White deliberately prevented Patriot from acquiring knowledge of his off-the-clock overtime work.

In response, White first argues that he established the elements of a FLSA claim for unpaid overtime compensation and that Patriot has not cited any finding of fact by the district court that it contends is clearly erroneous. White also contends that Patriot misstates the law and attempts to create standards "contrary to clearly established precedent," including that he needs to prove that he was instructed not to report his time or prevented from reporting it. White argues that the fact that Patriot had rules in place for reporting time makes no difference when the employer knows an employee is working overtime without pay and continues to permit it. White thus urges, as the district court found, that Patriot had actual and constructive knowledge that he was not being compensated for his off-the-clock overtime hours, so he did not deliberately prevent Patriot from discovering it.

1. **Whether White's claims fail absent evidence that Patriot instructed him not to record his off-the-clock time or stopped him from inputting his time.**

Patriot argues that the judgment should be reversed because White failed to present evidence that it instructed him not to record his off-the-clock time or stopped him from inputting his time, citing *Miller v. Texoma Medical Center, Inc.*, 2015 WL 5604676 (E.D. Tex. Sept. 23, 2015), for support. But this argument misstates the holding in that case. The *Miller* court held that even if it assumed that the plaintiff presented sufficient evidence of overtime work for which he was not compensated, the plaintiff failed to present sufficient evidence that his employer had actual or constructive knowledge of his overtime work. *Id.* at *4–6. That the plaintiff did not present evidence that his employer instructed him not to report his time was noted only at the end of the court's order, when it summarized the total lack of evidence presented by the plaintiff:

> Plaintiff has not shown—as he is required to do—sufficient evidence of either the existence of damages or any "just and reasonable inference" of the amount of damages. There is no evidence that Plaintiff was instructed to not record his time or prevented from reporting his time or was directed by Defendant to work off-the-clock without reporting that time. Without any evidence of the amount or the extent of hours Plaintiff worked without compensation or any evidence that Defendant was aware that [ ]he worked overtime hours without compensation, Plaintiff has failed to raise a genuine issue of material fact as to whether [ ]he went uncompensated for overtime work and he shall take nothing by his FLSA claim.

*Id.* at *6 (quoting *Ihegword v. Harris Cty. Hosp. Dist.*, 555 F. App'x 372, 374 (5th Cir. 2014)). The plaintiff's failure to show that his employer instructed

him not to record his time was not dispositive of the issue but was instead just one of the factors the court considered.

Likewise, while the Fifth Circuit in *Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959 (5th Cir. 2016), noted the absence of evidence that the employer instructed its employee to underreport hours, it explained that this was "not dispositive" of the plaintiff's claim. *Id.* at 965. In *Fairchild*, an employee brought a claim for unpaid overtime compensation, alleging that she did not report all her overtime hours to her employer, even though she was responsible for doing so. *Id.* at 962–63. Following a bench trial, the district court found that the employee failed to show that her employer had actual or constructive knowledge that she worked overtime for which she had not been paid, and the Fifth Circuit affirmed this finding. *Id.* at 963–65. The plaintiff had argued that her employer had constructive knowledge because it had access to her computer usage reports, which allegedly showed that she worked additional hours after clocking-out. *Id.* at 965. But the employer's policies required that all employees accurately report the hours they worked *and* prohibited hourly employees from working overtime without prior approval. The plaintiff neither sought authorization to work the overtime in question nor reported it. *Id.* Indeed, she testified that she intentionally failed to report her unauthorized overtime specifically because her employer prohibited such overtime. The Fifth Circuit then used the fact that there was no evidence the employer compelled her to underreport her hours to bolster its conclusion that the plaintiff failed to prove her claim. *See id.* This is a far cry from our requiring such evidence to prove an unpaid overtime claim.

As shown above, the cases upon which Patriot relies do not support its position that White was required to show that Patriot instructed him not to record his overtime or prevented him from doing so. And, as shown below, White presented ample evidence to support the district court's finding that Patriot had actual or constructive knowledge of his overtime work and knew

he was not being compensated for it.  Accordingly, Patriot's first contention lacks merit.

### 2. Whether White's alleged failure to follow Patriot's rules for reporting his overtime makes his claims deficient as a matter of law.

Patriot next contends that White's claims "are deficient as a matter of law" because Patriot had specific rules for reporting overtime hours and White failed to follow those rules.  In support, Patriot quotes a Sixth Circuit case, which states that "[u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process."  *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012).  However, Patriot takes this statement out of context.  The statement was made in addressing whether the employer had actual or constructive knowledge of the employee's unpaid overtime compensation given the fact that the employee did not follow the company's reporting requirements.  Indeed, the cases cited in *Baptist Memorial* in support of the statement involve employers who lacked the requisite knowledge and only would have discovered the unpaid overtime hours after weeding through their records.  *See Hertz v. Woodbury Cnty.*, 566 F.3d 775, 782 (8th Cir. 2009) ("It would not be reasonable to require that the County weed through non-payroll CAD [Computer Aided Dispatch] records to determine whether or not its employees were working beyond their scheduled hours."); *Newton*, 47 F.3d at 749 ("If we were to hold that the City had constructive knowledge that [the employee] was working overtime because [the city manager] had the ability to investigate whether or not [the employee] was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime."); *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414–15 (9th

Cir. 1981) ("[W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a).").

Here, it is true that Patriot had a system for its employees to report their time. Hourly employees were required to clock-in when they started work and clock-out when they stopped. To make adjustments to their time, employees could contact their supervisor or payroll administrator. Patriot's employee manual also explained the timekeeping process, but the parties disagree as to which version was in place during White's employment.[4]

However, even assuming, as Patriot insists, that the manual in place during White's employment required employees to report time worked away from the office, Patriot had a duty and the power to enforce the rule. *See* 29 C.F.R. § 785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."); *U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 444 (5th Cir. 2021) ("All testifying employees stated that their lead supervisor . . . either said or implied that they shouldn't record pre- and post-shift time. So even though Five Star's manual instructed employees to record all of their time, the record shows that the de facto policy was that they

---

[4] One version of the manual stated that employees were required to report time worked "away from the office," and Dixon and Herzog testified that the "0716" located at the bottom of the manual meant that version was last amended in July of 2016, during White's employment. But White testified that that version did not exist during his employment with Patriot, and the version then in force did not include the requirement that employees report time worked away from the office.

shouldn't."). As the district court found, upper management knew or at least should have known that White was performing work outside of typical day-shift hours, and Herzog admitted to knowing that White was not reporting, or being compensated for, all his work. Accordingly, although White may not have followed Patriot's rules for reporting all his overtime hours, he presented sufficient evidence that Patriot had actual or constructive knowledge that it was happening.

It also does not matter that White controlled the amount of time he worked and that "Patriot assumed that he was recording time properly." "'An employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.'" *Fairchild*, 815 F.3d at 964 (alteration omitted) (quoting *Harvill*, 433 F.3d at 441).

### 3. Whether White was required to show that Patriot knew he was not being compensated for his off-the-clock time.

Patriot is correct that White was required to show that Patriot knew or should have known he was not being compensated for his off-the-clock time, but the district court found that Patriot did know. White presented evidence showing that he often worked additional hours outside of the time he spent clocked-in at work and testified that the culture at Patriot was to not "add stuff [they] did at home." Herzog admitted that he "knew at some point" that White "had worked hours that he hadn't been compensated for." The two commiserated that this was "the Patriot way." White also copied members of Patriot's upper management on many of his late-night emails and presented some of those emails at trial. Thus, the district court

did not clearly err in finding that Patriot had actual and constructive knowledge of White's uncompensated overtime.[5]

Patriot also argues that White cannot prevail because he "deliberately evade[d]" Patriot's rules for reporting his time. It is true that an employee "cannot prevail on an FLSA overtime claim if that 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work.'" *Fairchild*, 815 F.3d at 964 (quoting *Harvill*, 433 F.3d at 441). However, as explained, White presented sufficient evidence to prove that Patriot knew or should have known that he was performing uncompensated overtime work. It cannot be said, then, that White was deliberately evading Patriot's timekeeping policy, especially in light of the fact that White told his supervisor he was not recording the hours he worked off-the-clock.

## C. Calculation of Damages

"The calculation of unpaid overtime is a mixed question of law and fact—the number of overtime hours is a finding of fact, but the methodology used to calculate back wages based on that number is a question of law." *Five Star*, 987 F.3d at 441 (citing *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 381 (5th Cir. 2013)). "'When reviewing mixed questions of law and fact, this court reverses only if the findings are based on a clearly erroneous view of the facts or a misunderstanding of the law.'" *Id.* (quoting *Ransom*, 734 F.3d at 381).

---

[5] Although the finding of constructive knowledge is a closer call in this case (in that Patriot's upper management, aside from Herzog, denied knowing White failed to record all his time despite being aware of his late-night work), we need not explore the issue because there is sufficient evidence that Patriot (through Herzog) had actual knowledge of White's uncompensated overtime.

Patriot argues that White never kept track of the overtime hours he now claims, "his claim is based on speculation only," and he was required to present proof of the actual work he performed and for which he was not compensated.[6]  Patriot then contends that "White's estimation of overtime is faulty.  The regular rate is misstated, and his estimate also wrongly includes time when he was on paid leave and not working for Patriot."  However, Patriot does not explain how the "regular rate" is misstated, nor does it propose a correct damages amount.

White responds that his estimate of the hours he spent off-the-clock is reasonable and was properly accepted by the district court.  And, says White, Patriot has not explained how or why the district court clearly erred in finding that his estimate was a just and reasonable inference of his actual hours worked off-the-clock.

As explained above, under the *Mt. Clemons* framework, when an employer has failed to keep adequate records, the plaintiff "need not prove the precise extent of uncompensated work, though he must present more than unsubstantiated assertions."  *Flores*, 73 F.4th at 362 (quotations omitted).  The burden then shifts to the employer to come forward with evidence rebutting plaintiff's claims.  "The employer can discharge this burden by presenting either 'evidence of the precise amount of work performed or evidence to negative the reasonableness of the inference to be drawn from the

---

[6] Patriot also asserts several "evidentiary deficiencies" related to the emails White presented at trial to support his estimate of unpaid overtime hours.  In particular, Patriot argues that White presented duplicate emails and emails sent while he was clocked-in at work.  However, Patriot raised these issues at trial, so the district court was aware of them, and weighed them, when it issued its findings of fact and conclusions of law.  Moreover, counsel for White explained that he compiled his exhibits months earlier, in preparation for the initial trial date and before he received Patriot's exhibit showing White's clock-in and -out times (which was actually received after the close of discovery), so the supposed deficiencies are explained by Patriot's delays.

employee's evidence.'" *Id.* (alteration omitted) (quoting *Mt. Clemens*, 328 U.S. at 687–88). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Mt. Clemens*, 328 U.S. at 688.

At trial, White testified that he sent and received emails and made phone calls while not clocked-in at work and was not compensated for that work. He estimated that he worked at least eight hours each week off-the-clock, which he stated was a "very, very conservative and very, very fair" estimate. In support of this estimate, White presented some of the emails he sent during his employment with Patriot and compared them to his time sheets to show that they were sent outside of the hours he reported. However, White was unable to present any of his emails from his last 14 months of employment when his workload increased, or any of his phone records, because Patriot did not produce them. Again, following White's termination, both his email and phone were in Patriot's custody. Patriot did not produce any evidence to rebut White's estimate or evidence, and the district court concluded that White's estimate was just and reasonable.

The record contains sufficient evidence to support this conclusion. Because the records were incomplete, White was permitted to testify to an approximate number of his uncompensated overtime hours. *See Five Star*, 987 F.3d at 445–46 ("Five Star mainly contests that the damages award was an approximated number. But that's what *Mt. Clemens* allows when, as here, FLSA-required time records are incomplete."). Even so, he did provide proof of some of the emails he sent late at night when he was not clocked-in, and Patriot did not present any evidence rebutting White's estimate.

## IV. CONCLUSION

Patriot fails to show that the district court erred in its finding of FLSA liability or its calculation of damages. We thus AFFIRM.