# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 10, 2025

Lyle W. Cayce
Clerk

No. 24-40289

_____

Rosendo Joseph Rosales, III; Leo C. Butler, Jr.,

*Plaintiffs—Appellants*,

*versus*

Industrial Sales & Services, L.L.C.; Bernard Gochis,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:20-CV-30

_____

Before Jones, Southwick, and Oldham, *Circuit Judges*.
Per Curiam:[*]

Plaintiffs sued their former employer for failing to pay them overtime as required by the Fair Labor Standards Act. The district court held that the employer was a motor private carrier and that the employees performed duties that exempted them from the Act's requirement to pay overtime. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40289

## FACTUAL AND PROCEDURAL BACKGROUND

Alpine Site Services, Inc. is a motor private carrier that sells, delivers, and installs screwpiles used in the construction of foundations. The Defendant, Industrial Sales & Services, L.L.C. ("ISS"), manufactures screwpiles, then loads and secures them onto flatbed trailers for transport to jobsites across the country. ISS employees are payrolled by ISS, and ISS in turn bills Alpine hourly for the labor of ISS's employees. Alpine is the only company for which ISS performs any services. Alpine, as a motor private carrier, is subject to the Department of Transportation's rules for transporting goods.

**Flat-deck trailer loaded with screwpiles.**



The Plaintiffs, Rosendo Rosales, III, and Leo Butler, Jr., are former employees of ISS. Rosales began working for ISS in 2017 as a laborer and was subsequently promoted to welder. Butler was hired by Alpine as a welder in 2018 and transferred to ISS two months later. A welder's job duties include welding, loading trailers, securing loads for transport, and inspecting trucks for safety items such as lights, tires, brakes, and horns. Laborers also assist in loading equipment and materials and checking safety items on the

trucks.  Both Rosales and Butler performed such duties.  Rosales left the company in 2019, and Butler was terminated in late 2020.  In 2020, Rosales sued ISS on behalf of himself and other similarly situated employees for failure to compensate its employees appropriately for overtime in violation of the Fair Labor Standards Act ("FLSA").  Butler subsequently joined the lawsuit.

In the district court, ISS argued that Rosales and Butler were exempt from the FLSA's overtime provision because they performed work that fell within exemptions, exclusions, exceptions, or credits provided for in the FLSA, specifically the Motor Carrier Act ("MCA") exemption.  In lieu of a bench trial, the parties stipulated to all relevant facts, and ISS moved for judgment pursuant to Federal Rule of Civil Procedure 52(c).  The district court found that ISS, as a joint employer with Alpine, belonged to the class of carrier subject to the Secretary's jurisdiction, and that Rosales and Butler performed a character of work covered by the MCA.  Therefore, the MCA exemption to the FLSA's overtime-pay requirements was satisfied.  Rosales and Butler timely appealed.

These same plaintiffs also joined a lawsuit against Alpine. *See Kelley v. Alpine Site Servs., Inc.*, 110 F.4th 812 (5th Cir. 2024). Both suits were filed in the United States District Court for the Southern District of Texas, but in different divisions.  In *Alpine*, this court affirmed the district court's determination as to Alpine that these two individuals were not entitled to overtime because of the MCA exemption. *Id.* at 815–16.  Thus, much of what is argued in this appeal has already been precedentially resolved in the related litigation.

## DISCUSSION

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above

specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "The overtime-pay rule is subject to several enumerated exemptions." *Cunningham v. Circle 8 Crane Servs., L.L.C.*, 64 F.4th 597, 600 (5th Cir. 2023) (quoting *White v. United States Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021)). "[W]e give a 'fair reading' to the exemptions" and the employer bears the burden to show the exemption applies. *Id.* (quoting *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018)). The MCA is one such exemption. 29 U.S.C. § 213(b)(1).

The MCA exempts from overtime pay "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49." *Id.* Section 31502 of Title 49 provides that "[t]he Secretary of Transportation may prescribe requirements for . . . qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." § 31502(b)(2). The MCA exemption "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a).

On appeal, Rosales and Butler argue the district court erred in two ways. First, the district court erred in finding the motor carrier exemption applied because their employer, ISS, is not a carrier. Second, the district court erred in finding they engaged in exemption-qualifying transportation work frequently enough for the motor carrier exemption to apply. We will address each argument in that order.

"When the district court enters a Rule 52(c) judgment, we review its factual findings for clear error and its conclusions of law *de novo*." *Fairchild*

4

*v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964 (5th Cir. 2016). The parties stipulated to the relevant facts, leaving us to consider only the legal issues.

## I.    *Applying the MCA Exemption to ISS*

Rosales and Butler argue that the district court erred in holding the motor carrier exemption applied because they were employed by ISS, which is not a carrier. They argue that under *Boutell v. Walling*, 327 U.S. 463 (1946) and *Steinmetz v. Mitchell*, 268 F.2d 501 (5th Cir. 1959), they do not come within the MCA exemption.

In *Boutell*, the Supreme Court considered whether mechanics employed by a non-motor carrier to provide exclusive service to a different, but related, motor carrier company would satisfy the motor carrier exemption. 327 U.S. at 465–66. In finding the employees nonexempt, the Court explained the companies were "entit[ies] separate and distinct from" one another and that "[t]he record contain[ed] no suggestion" the employees were or should have been treated as employees of the carrier company. *Id.* at 465, 468. In *Steinmetz*, the Court held that "one engaged . . . in performing services for a carrier or carriers does not thereby himself become a carrier." 268 F.2d at 503. Those employees were not employed by the carrier, but by a contractor working with the carrier. *Id.* at 502.

Here, the record supports that Alpine and ISS are not distinct entities. The parties stipulated that Alpine and ISS have a centralized management structure, all management personnel are employees of Alpine, Alpine is directly responsible for interviewing, hiring, disciplining, and firing ISS employees, and Alpine employees set the rate of pay consistent with that of employees performing safety-affecting duties for Alpine. Alpine employees also set the schedules, terms and conditions of employment, and maintain and store employment records. Neither *Boutell* nor *Steinmetz* considered companies with a shared management structure.

Further, neither precedent considered whether a non-carrier that jointly employed the plaintiff–employees would fall under the MCA exemption.  Here, the parties stipulated that Alpine and ISS were joint employers.  A prior panel of this court held that non-carrier employers who act as joint employers with carriers are subject to the Secretary's jurisdiction over carriers.  *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472–73 (5th Cir. 2010), *abrogated on other grounds by Encino Motorcars, L.L.C. v. Navarro*, 584 U.S. 79 (2018).  The district court did not err in holding that ISS, as a joint employer with Alpine, was subject to the Secretary's jurisdiction.

## II.    The Class of Work Involved in the Employee's Job

As mentioned, the MCA exemption "depends both on the class to which [the] employer belongs and on the class of work involved in the employee's job."  29 C.F.R. § 782.2(a).  Rosales and Butler contend that even if ISS was a motor private carrier, ISS failed to prove they engaged in exemption-qualifying transportation work frequently enough for the motor carrier exemption to apply.  They concede their loading duties would otherwise qualify them for the motor carrier exception but argue the district court erred in finding the exemption applied to them because they were not solely or substantially engaged in exemption-qualifying activities.

In *Alpine*, we addressed that issue on what amounts to the same facts, though the evidence could be slightly different concerning these two plaintiffs in each case.  *See* 110 F.4th 812.  There, we held that "[t]here is no specific, minimum frequency with which an employee must engage in work to which the MCA exemption would apply."  *Id.* at 816.  "[W]e do not require a particularly high concentration of qualifying work."  *Id.* (quoting *Amaya v. NOYPI*, 741 F. App'x 203, 206 (5th Cir. 2018)).

Here, Rosales and Butler stipulated they could be, and regularly were, called upon to load trailers, secure loads for transport, and check the trucks

for safety items. Rosales stipulated that "he performed safety-affecting duties regularly, including securing screwpile loads on trailers for safe travel approximately one or two times per week." Butler stipulated that "[h]e secured loads for transport approximately weekly" and "at least weekly . . . checked trailers to ensure proper functioning of safety items." The job description of welder includes the following duties: "[l]oad trailers . . . for transport to jobsites," "secure loads . . . for transport to jobsites," "[s]pot other loaders," "[c]heck out trucks for safety items, lights, tires, brakes, [and] horns," "[s]ecur[e] items onto the truck . . . to be welded to pile in field," and "[m]inor mechanical repairs." Rosales and Butler had continuing, safety-affecting duties and could be called upon at any time to perform those tasks. Our precedents have found comparable degrees of relevant work qualified for the MCA exemption. *Id.* at 816; *see also Songer*, 618 F.3d at 475–76.

Rosales and Butler also argue that the MCA exemption should be determined on a workweek basis. Under the exemption, however, if an employee is "called upon in the ordinary course of his work to perform, *either regularly or from time to time*, safety-affecting activities . . ., he comes within the exemption *in all workweeks* when he is employed at such job." § 782.2(b)(3) (emphasis added). This applies no matter "the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek." *Id.* Indeed, "the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'" *Id.* "[As] long as an employee's continuing duties are safety-affecting," the exemption applies in all workweeks. *Alpine*, 110 F.4th at 816. Rosales and Butler performed safety-affecting duties at least weekly and had a continuing duty to do so. The district court did not err.

AFFIRMED.